Matter of Wythe Berry LLC v Goldman (2024 NY Slip Op 04632)

Matter of Wythe Berry LLC v Goldman

2024 NY Slip Op 04632

Decided on September 26, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 26, 2024

Before: Webber, J.P., Kern, Oing, González, Rosado, JJ. 

Index No. 655683/23 Appeal No. 2615 Case No. 2023-06011 

[*1]In the Matter of Wythe Berry LLC, et al., Petitioners-Appellants,
v
Yoel Goldman, Respondent-Respondent.

Freedman Normand Friedland LLP, New York (Devin "Velvel" Freedman of counsel), for appellants.
Dechert LLP, New York (Gary J. Mennitt of counsel), for respondent.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered December 20, 2023, which denied petitioners' application pursuant to CPLR 7503(b) to stay an arbitration and dismissed the petition, unanimously reversed, on the law, without costs, the petition granted, and the arbitration stayed as to petitioners.
In 2013, respondent Yoel Goldman and nonparty Zelig Weiss commenced a joint venture to develop a property in Brooklyn into a hotel, which opened in 2016 as the William Vale Hotel. They developed the hotel through their primary operating company, petitioner Wythe Berry LLC, as well as the other petitioner LLCs, of which Weiss is the managing member.
In 2016, Goldman, Weiss, and other individual members executed the Fifth Amendment to the Operating Agreement of Wythe Berry LLC, which reflected certain refinancing changes to the venture. The Fifth Amendment provides that, "[e]xcept as otherwise provided herein, any dispute arising under this agreement . . . shall be determined by the American Arbitration Association [AAA], New York, New York, in accordance with its rules then governing." The operating agreements of the other petitioner LLCs, executed by only Goldman and Weiss, do not contain arbitration provisions.
Goldman and Weiss separately executed an agreement, which the parties call the Side Agreement. The Side Agreement, which was in Hebrew and translated to English, states that Goldman and Weiss "hereby acknowledge, both on our own behalf and on that of all the corporations registered under our names, whether in whole or in part, and that have any relevance or connection to the [hotel] land and building, without exception — fully acknowledge . . . everything that is written" in the Side Agreement. The Side Agreement further provides that the "main and principal agreement that shall be determinative and dispositive between us in any case of doubt, dispute, or . . . conflict that may perhaps arise between us . . . shall be . . . [the] 'Fifth Amendment Operating Agreement', which was signed by us on the said date."
The LLCs' petition to stay arbitration should have been granted. Although AAA rules delegate to the arbitrator the issue of whether a particular dispute is subject to an arbitration agreement, "it is for the courts to determine, in the first instance, whether the parties have entered into a binding agreement to arbitrate" (Liberty Mgt. & Constr. v Fifth Ave. & Sixty-Sixth St. Corp., 208 AD2d 73, 77 [1st Dept 1995]; see CPLR 7503[b]).
Because Wythe Berry LLC did not execute the Fifth Amendment, and neither Goldman nor Weiss signed on its behalf, there is no "clear and explicit evidence that [Wythe Berry LLC] intended to be bound" by the Fifth Amendment, and it is therefore "not bound by the arbitration provision[] contained therein" (Matter of National Union Fire Ins. Co. of Pittsburgh, PA v Chukchansi Economic Dev. Auth., 104 AD3d 467, 468 [1st Dept 2013] [internal quotation marks omitted]).
The New York's [*2]Limited Liability Company Act Law (the LLC Law) does not dictate that nonsignatory LLCs are always bound by the terms of their operating agreements. The Revised Uniform Limited Liability Company Act provides that an LLC is bound by the operating agreement, whether or not the company has itself manifested assent to the operating agreement, but "New York has not adopted the Uniform Act" (LNYC Loft, LLC v Hudson Opportunity Fund I, LLC, 154 AD3d 109, 115 n 1 [1st Dept 2017]). The LLC Law defines "operating agreement" as "any written agreement of the[LLC's] members concerning the business of a[n] [LLC] and the conduct of its affairs" (LLC Law § 102[u]). Because an LLC "shall be a separate legal entity" (id. § 203[d]) from its members, a nonsignatory LLC is a nonparty to an agreement among its members only. The LLC Law otherwise does not suggest that operating agreements necessarily govern the relationships between LLCs and their members (see id. § 417[a]).
Petitioners' "acknowledge[ment]" of the Side Agreement does not explicitly manifest intent to be bound by the Fifth Amendment's arbitration clause. The phrase "between us," as used in the Side Agreement, does not unambiguously include petitioners. The Side Agreement incorporates "the contract that is known and called by the title 'Fifth Amendment Operating Agreement', which was signed by us on the said date." The Fifth Amendment was "signed by" only Goldman, Weiss, and other individuals—it was not signed by any of the petitioner LLCs. It would be inconsistent with contract interpretation principles to read "us" in one part of this paragraph to mean Goldman, Weiss, and "all the corporations registered under [their] names," but interpret it to mean only Goldman and Weiss in another part of the paragraph (see Giray v Ulukaya, 212 AD3d 439, 440 [1st Dept 2023]). The more internally consistent reading of the Side Agreement is that petitioners "acknowledge[d]" only that the Fifth Amendment is the governing agreement "between [Goldman and Weiss] in any cause of ... dispute ... between [Goldman and Weiss]." Petitioners' "acknowledge[ment]" of the Side Agreement is therefore not "a clear and unequivocal manifestation of an intent to arbitrate" (Gulf Underwriters Ins. Co. v Verizon Communications, Inc., 32 AD3d 709, 710 [1st Dept 2006]). Accordingly, petitioners "cannot be forced to arbitrate" (Mionis v Bank Julius Baer & Co., 301 AD2d 104, 109 [1st Dept 2002]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 26, 2024